MURPHY & ASSOCIATES PC
C. NICOLE MURPHY, ESQ. (SBN 166874)
455 Capitol Mall, Suite 403
Sacramento, CA  95814
Telephone:  (916) 444-6262
Email:  cnm@murphyassociatespc.com

Attorneys for BETH I. WELCH

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETH I. WELCH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>HOUSING AUTHORITY OF THE COUNTY OF SACRAMENTO; SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY; LA SHELLE DOZIER, in her official capacity as the Executive Director of the Sacramento Housing and Redevelopment Agency; MARC LEDET, in his official capacity as the Program Integrity Analyst of the Sacramento Housing and Redevelopment Agency; and DOES 1 through 20, inclusive,<br><br>Defendants. | No.<br><br>**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**<br><br>**DEMAND FOR JURY TRIAL** |

PLAINTIFF BETH I. WELCH (hereinafter "Plaintiff" or "Ms. Welch") alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action for declaratory, injunctive and compensatory relief pursuant to Section 1983 of Title 42 of the United States Code (hereinafter "Section 1983") based upon the continuing violations of Plaintiff's rights under the Fourteenth Amendment, specifically the Due Process Clause, of the United States Constitution, and the United States Housing Act of 1937, as amended (hereinafter the "Housing Act"), specifically Section 1437f of Title 42 of the United

States Code and implementing regulations set forth in the Code of Federal Regulations (24 C.F.R. Part 982). This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 based on Section 1983 and questions of federal constitutional and statutory law.

2. Venue is proper in the Eastern District under 28 U.S.C. § 1391(b) because all of the events and conduct giving rise to the claims in this action occurred in the County of Sacramento, State of California, within the Eastern District.

**INAPPLICABILITY OF CALIFORNIA GOVERNMENT CLAIMS ACT**

3. The California Government Claims Act (California Government Code section 810 *et seq*.) does not apply to this action brought under Section 1983. (*Williams v. Horvath*, 16 Cal.3d 834 (1976).)

**PRELIMINARY STATEMENT**

4. Plaintiff Beth Welch became a participant in the Housing Choice Voucher Program (hereinafter "HCV Program") under and pursuant to Section 8 of the Housing Act in 2003 and her participation was unlawfully terminated by Defendants in 2019.[1] Defendants not only terminated Plaintiff's housing assistance benefits, but also required her to repay <u>all</u> previously received housing assistance benefits from 2003 to 2019, a sum of $185,400.00. Defendants' actions were taken without providing Plaintiff proper notice of the termination or proper explanation of the basis for the required total repayment of housing assistance benefits and without a fair hearing and other safeguards basic to procedural due process required by the Constitution and laws of the United States. As a result, Plaintiff has been and continues to be unlawfully deprived of her housing assistance benefits.

5. Defendants' Housing Choice Voucher Administrative Plan 2019 describes the mission of the HCV Program "to promote adequate and affordable housing, economic opportunity and a suitable living environment free from discrimination." Further, it describes that "[o]ur mission is performed with: (1) Dignity – allowing each applicant and participant a sense

---

[1] Plaintiff's housing assistance payments were stopped on June 1, 2019, prior to any notice of termination from Defendants. Two different notices of termination were later provided by Defendants – one letter made termination effective July 30, 2019; the other letter made termination effective August 31, 2019. These actions and letters are indicative of Defendants' muddled and confusing handling of communications with Plaintiff.

2
COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

of self-esteem; (2) Fairness – remaining objective at all times, remembering that there are two sides to every story; (3) Respect – treating others in a non-judgmental manner; and (4) Sensitivity – demonstrating empathy by ensuring that program information provided is complete and accurate." Defendants' actions failed that mission statement in all regards. Most particularly, knowing that Plaintiff's son died in late January 2019 and that she remained distraught, Defendant Marc Ledet showed none of the exemplary qualities promoted in the mission statement. He conducted tenant conferences in a small windowless meeting room during which he leveled accusations of program abuse and fraud and threats of criminal prosecution and jail time at Plaintiff. Plaintiff was wrongfully made to feel afraid and believed she had no choice but to accept the decisions he pronounced.

**DEMAND FOR JURY TRIAL**

6. Plaintiff demands a jury trial.

**PARTIES**

7. Plaintiff Beth Welch currently resides in, and at all relevant times mentioned herein did reside in, a rental dwelling located at 4801 Marconi Avenue, #12, in Carmichael, California. Ms. Welch is, and at all relevant times mentioned herein was, a low-income individual who became eligible and was approved by Defendants to participate in the Housing Choice Voucher Program in 2003.

8. Defendant Housing Authority of the County of Sacramento (hereinafter "County Housing Authority") is, and at all relevant times mentioned herein was, a public body, corporate and politic, established by the County of Sacramento and organized and existing under and pursuant to the Housing Authority Law of the State of California (Health and Safety Code section 34200 *et seq*.). The County Housing Authority serves as the local public housing agency ("PHA") for purposes of the Housing Choice Voucher Program.

9. Defendant Sacramento Housing and Redevelopment Agency ("SHRA") is, and at all relevant times mentioned herein was, a joint powers authority created by the City and County of Sacramento under Government Code section 6500 *et seq.* to represent both jurisdictions for affordable housing and community redevelopment needs. SHRA serves as the administrative arm

1  of the County Housing Authority and, in that capacity, administers and oversees the Federal
2  Housing Choice Voucher Program in Sacramento County, California.

3       10.   Defendant La Shelle Dozier is, and at all relevant times mentioned herein was, the
4  Executive Director of SHRA, and responsible for SHRA's administration of the Federal Housing
5  Choice Voucher Program for the County Housing Authority.

6       11.   Defendant Marc Ledet (who also signs his correspondence as "Mark Laday") is,
7  and at all relevant times mentioned herein was, the Program Integrity Analyst assigned by SHRA
8  to review Plaintiff's eligibility in the Housing Choice Voucher Program.

9       12.   Defendant DOES 1 through 20, inclusive, are persons, firms, corporations and
10 public or quasi-public entities that have been instrumental in or participated in the matters that are
11 the subject of this action. Plaintiff does not know the true names and capacities of the defendants
12 sued as DOES 1 through 20, and will amend this complaint to show their true names and
13 capacities when ascertained.

## STATUTORY AND REGULATORY FRAMEWORK

15      13.   The Housing Choice Voucher Program is a federal program funded by the U. S.
16 Department of Housing and Urban Development ("HUD") pursuant to which it pays rental
17 subsidies (referred to as "housing assistance payments" or "HAP") to enable eligible low-income
18 families to afford decent, safe, and sanitary housing. The HCV Program is authorized by Section
19 8 of the Housing Act (42 U.S.C. § 1437f, in particular, § 1437f(o)).

20      14.   The HCV Program is funded by the federal government but administered by local
21 public housing agencies (PHAs). (See 42 U.S.C. § 1437f(o).) Defendant County Housing
22 Authority is the local PHA responsible for administering the HCV Program in the County of
23 Sacramento and has delegated that administrative responsibility to Defendant SHRA.

24      15.   Once an individual has been approved for participation in the HCV Program,
25 authorized assistance can only be terminated based on specific causes set forth in the law and
26 regulations. (24 C.F.R. §§ 982.552 and 982.553.) Because authorized assistance can only be
27 terminated for cause, it is a property interest protected by the requirement of procedural due
28 process. (*Goldberg v. Kelly*, 397 U.S. 254, 266-71, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); see

also *Johnson v. Housing Authority of City of Oakland* (2019) 38 Cal.App.5th 603, 612 [a decision terminating public assistance benefits affects fundamental vested rights].)

16. Before terminating the authorized assistance of a participating individual, the PHA is required to provide adequate notices and an opportunity for an informal hearing before an impartial hearing officer. (24 C.F.R. § 982.555.)

**STATEMENT OF FACTS**

17. Plaintiff Beth Welch applied for and was approved by SHRA for housing assistance payment ("HAP") benefits in 2003. At the time of her approval, Ms. Welch was a divorced, single mother of two minor children.

18. On or about July 3, 2003, Ms. Welch entered into a lease agreement with Bruce Mintzer (hereinafter also referred to as "Landlord" or "Mr. Mintzer") for an apartment located at 4801 Marconi Avenue, #12, Carmichael, California. The lease was approved by SHRA. SHRA and Mr. Mintzer then entered into an HAP Contract pursuant to which SHRA agreed to pay a portion of Ms. Welch's monthly rent directly to Mr. Mintzer.

19. On September 5, 2007, Ms. Welch married John Michael Mack.

20. Both before and after the marriage, Mr. Mack maintained his own separate residence. From 1997 to 2014, Mr. Mack resided at 4743 Marconi Avenue, #16, Carmichael, California. From 2014 to the date of Defendants' actions terminating Ms. Welch's HAP benefits, Mr. Mack resided at 4735 Marconi Avenue, #4, Carmichael, California. Because Mr. Mack did not live with Ms. Welch and her children, Ms. Welch did not believe that she was required to list him on her annual recertifications for the HCV program.

21. Defendants claim to have conducted a review of Ms. Welch's 2019 annual recertification application on or about April 22, 2019, and observed that she was using an email address of "beth@mikemackconstruction.com." Defendants claim that this was considered an address of an employer and raised a concern of possible unreported income.

22. On May 20, 2019, Defendant Marc Ledet telephoned Ms. Welch and scheduled a Mandatory Tenant Conference (hereinafter "MTC") for May 29, 2019, to discuss the unreported information. Defendant Ledet claimed to have scheduled an MTC for May 1, 2019, that

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

Ms. Welch failed to attend, however, neither Ms. Welch nor Mr. Mintzer received any notice of a May 1, 2019, MTC.

23. A notice of the May 29, 2019, MTC was received by both Ms. Welch and Mr. Mintzer. The notice states that "you" must appear at a tenant conference on May 29, 2019, to discuss "unreported business/employment (Mike Mack Construction) at the subsidized unit and unapproved residents. We will also discuss an overpayment of housing assistance."

24. On May 29, 2019, Ms. Welch and Mr. Mintzer attended the MTC. Defendant Ledet conducted the MTC, accusing both Ms. Welch and Mr. Mintzer of program abuse and fraud and threatening criminal prosecution and jail time. Defendant Ledet's actions were those of a bully, not the objective, respectful, sensitive administrator described in the Defendants' mission statement. During the MTC, Mr. Mintzer provided an affidavit stating that there were no unauthorized occupant lease violations as to Ms. Welch's lease since John Michael Mack retained his own apartment. Mr. Mintzer also furnished Defendant Ledet with a copy of Mr. Mack's rental agreement and copies of Mr. Mack's utility bills.

25. On June 1, 2019, Defendants did not pay the monthly housing assistance payment for Ms. Welch,[2] and they have not paid any further monthly housing assistance payments for Ms. Welch. Neither Ms. Welch nor Mr. Mintzer were aware of the termination of the monthly housing assistance payments for Ms. Welch until June 3, 2019.

26. Also on June 1, 2019, Defendants withheld housing assistance payments on eight of Mr. Mintzer's other HAP contracts causing him to believe that action was being taken against him as a housing provider under the HCV Program as a result of the accusations and threats made by Defendant Ledet during the May 29, 2019, MTC. Mr. Mintzer further believed that potentially all of his HAP contracts were at risk.

27. On June 4, 2019, Defendants paid the payments for the eight HAP contracts that had been withheld other than Ms. Welch's contract.

///

---

[2] Housing assistance payments under the HCV Program are routinely deposited directly into Mr. Mintzer's account on the first of the month.

28. Due to the passing of her son in late January 2019, Ms. Welch received a settlement of approximately $25,000 for her son's funeral expenses. Due to that settlement, which she believed affected her eligibility for the HCV Program, and the threats leveled by Defendant Ledet, Ms. Welch placed a request for self-termination from the HCV Program in Defendants' drop box on June 6, 2019. Defendants marked the request received on July 3, 2019.

29. Thereafter, Defendants issued three notices dated June 12, 2019: (a) Mandatory Tenant Conference Disposition Notice; (b) Notice of a Mandatory Tenant Conference scheduled for June 19, 2019; and (c) Notice of Proposed Termination of HCV Eligibility. As with the previous May 29, 2019, MTC notices, the June 12, 2019, notices were addressed separately to each of Ms. Welch and Mr. Mintzer.

30. The June 12, 2019, Mandatory Tenant Conference Disposition Notice has two check marked paragraphs:

> "[X] You attended the mandatory tenant conference and the following decision has been made: to propose termination of your HCV eligibility and require you to repay 100% of the housing assistance payments made on your behalf."

and

> "[X] The Housing Authority has determined that you are in violation of HUD regulations and is proceeding with proposed termination of your Housing Choice Voucher (HCV) eligibility."

31. The June 12, 2019, Notice of Mandatory Tenant Conference advised Ms. Welch and Mr. Mintzer to attend another Mandatory Tenant Conference on June 19, 2019, to review how overpayment of housing assistance was calculated and establish a repayment agreement. This notice specifically stated that failing to attend the upcoming MTC may result in termination of housing assistance.

32. The June 12, 2019, Notice of Proposed Termination of HCV Eligibility states that Defendant SHRA is proposing to terminate Ms. Welch's HCV eligibility, effective 7/30/19, for violations of specified HUD regulations, asserting that: "Ms. Welch failed to provide true and complete information regarding her marriage, household composition and income. As a result she received $185,400 overpayment in housing assistance payments." The notice then states that

Ms. Welch has fifteen days from the date of the notice to request an informal hearing and if she failed to do so, her housing assistance would terminate on July 30, 2019. However, Ms. Welch had already been ordered to attend another MTC the next week and, in any event, her housing assistance had already been terminated as of June 1, 2019.

33. On June 19, 2019, Ms. Welch and Mr. Mintzer attended the MTC as required. Again, Defendant Ledet conducted the MTC and again accused both Ms. Welch and Mr. Mintzer of program abuse and fraud and threatened them with criminal prosecution and jail time. Defendant Ledet told Ms. Welch that she was required to repay 100% of the housing assistance payments she received since her inception into the program in 2003 which amounted to $185,400.00. Defendant Ledet did not provide Ms. Welch with any documentation explaining the conclusion that the overpayment should be calculated back to the date of her initial eligibility.

34. No Mandatory Tenant Conference Disposition Notice was provided following the June 19, 2019, MTC.

35. As a result of Defendant Ledet's accusations of program abuse and fraud and threats of criminal prosecution and jail time during each MTC, and because he believed that all of his HAP contracts were potentially at risk, Mr. Mintzer gave Defendant Ledet a cashier's check in the amount of $185,400.00 on behalf of Ms. Welch at the conclusion of the June 19, 2019, MTC.

36. On June 20, 2019, Defendant Ledet demanded that Ms. Welch return to his office to sign an Overpayment of Housing Subsidy Tenant Repayment Agreement with Defendants that stated the $185,400.00 in overpaid subsidies had been paid in full on June 19, 2019.

37. On July 8, 2019 (just 18 days after the June 19 MTC, a period that included the July 4 holiday), Mr. Mintzer submitted an informal hearing request in the Defendants' drop box on behalf of Ms. Welch. Defendants did not respond to the request.

38. Defendants' Administrative Plan provides the following in Chapter 15:

> "In deciding whether to deny or terminate assistance because of action or failure to act by members of the family, the PHA will consider all relevant circumstances in each case, such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure to act."

There is no evidence to indicate that this consideration of all relevant circumstances was provided to Ms. Welch.

39. Defendants' Administrative Plan further provides the following in Chapter 18:

> "The PHA must provide the opportunity for an informal hearing before termination of assistance."

> "Any request for an appeal must be received in writing no later than 15 days from the date of the PHA's notification of adverse action. Late requests may be considered if good cause is provided by the family."

40. A Confirmation of Self-termination Notice, dated August 7, 2019, addressed only to Mr. Mintzer, states that Defendants had confirmed Ms. Welch's request to self-terminate her participation in the HCV Program and the Housing Assistance Payment would end as of August 31, 2019. As previously stated, Defendants had already ended Ms. Welch's housing assistance payments as of June 1, 2019. The August 7, 2019, notice made no mention of the earlier notice providing that Ms. Welch's participation would terminate on July 30, 2019.

41. A contract termination notice, dated August 7, 2019, addressed to Mr. Mintzer, states that the HAP contract for Beth Welch would be terminated effective August 31, 2019. Again, this August 7, 2019, notice made no mention of the earlier notice providing that Ms. Welch's participation would terminate on July 30, 2019.

42. On August 12, 2019, Mr. Mintzer again deposited the July 8, 2019, informal hearing request in the Defendants' drop box with a note to Defendant Ledet asking if the Defendants were considering the request.

43. More than a month later, on September 24, 2019, Defendant Ledet finally responded to Mr. Mintzer's informal hearing request via email asking if he would be available to meet on the matter on October 2, 2019. Mr. Mintzer replied that he was not available until after October 9, 2019. Defendant Ledet then proposed a new date and time within the timeframe that Mr. Mintzer had indicated that he was unavailable. All further communications between Defendant Ledet and Mr. Mintzer ceased.

///

///

44. On September 3, 2020, and March 12, 2021, Ms. Welch, through counsel, asked the Defendants to consider/reconsider her request for an informal hearing. Her request was denied each time by letters from Defendants dated October 29, 2020, and March 19, 2021.

**FIRST CAUSE OF ACTION**
Termination of Housing Assistance Payments Without Notice and Hearing
(Violation of the Due Process Clause of the Fourteenth Amendment)
(Against All Defendants)

45. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

46. Defendants have deprived Ms. Welch of her rightful property interest in housing assistance payments under the HCV Program without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

47. Defendants terminated housing assistance payments for Ms. Welch on June 1, 2019, prior to providing her with proper notice and the right to a hearing. The June 12, 2019, Notice of Proposed Termination of HCV Eligibility (the "June 12 Proposed Termination Notice") does nothing to remedy that failure and, in fact, merely makes it more egregious. The notice of a right to request an informal hearing in the June 12 Proposed Termination Notice was made moot not only because the termination of benefits had already occurred on June 1, 2019, but also because yet another MTC was scheduled for June 19, 2019, in the same matter, but without any further opportunity to request an informal hearing. The notices from Defendants were confusing and too late.

48. The basis for Defendants' decision was not adequately stated. The June 12 Proposed Termination Notice regurgitates various provisions of the Code of Federal Regulations concerning reasons for terminating assistance, including fraud, in its two pages and provides just two sentences concerning Ms. Welch: "Ms. Welch failed to provide true and complete information regarding her marriage, household composition and income. As a result she received $185,400 overpayment in housing assistance payment." Then, absurdly, it attaches a 6-page "Notice of Occupancy Rights under the Violence Against Women Act."

///

49. Ms. Welch has been irreparably harmed by Defendants' actions and is entitled to declaratory, injunctive and compensatory relief in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
Compulsory Repayment of Housing Assistance Payments Without Notice and Hearing
(Violation of the Due Process Clause of the Fourteenth Amendment)
(Against All Defendants)

50. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

51. Defendants have violated the Due Process Clause of the Fourteenth Amendment by compelling repayment of Ms. Welch's Section 8 HCV benefits without providing her with an adequate explanation and an opportunity for a hearing.

52. Defendants demanded repayment of 100% of the housing assistance benefits Ms. Welch received from her inception with the HCV Program in 2003 to termination in 2019. The only "explanation" is the conclusory statement in the June 12 Notice of Proposed Termination of HCV Eligibility that "[a]s a result she received $185,400 overpayment…."

53. The June 19, 2019, MTC was scheduled purportedly for the purpose of reviewing how the overpayment was calculated and to establish a repayment agreement. No documentation was provided at this meeting explaining the overpayment calculation and no notice of the opportunity to have an informal hearing following the June 19, 2019, final determination was provided.

54. Ms. Welch has been irreparably harmed by Defendants' actions and is entitled to declaratory, injunctive and compensatory relief in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
Termination of Housing Assistance Payments Without Notice and Hearing
(Violation of 42 U.S.C. § 1437f and 24 C.F.R. § 982.555)
(Against All Defendants)

55. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs 1 through 44, as though fully set forth herein.

///

///

56. Defendants have deprived Ms. Welch of her housing assistance payments under the HCV Program in violation of the Housing Act (42 U.S.C. § 1437f) and implementing regulations (24 C.F.R. § 982.555).

57. Defendants terminated housing assistance payments for Ms. Welch on June 1, 2019. The June 12, 2019, Notice of Proposed Termination of HCV Eligibility (the "June 12 Proposed Termination Notice") does nothing to remedy that failure and, in fact, merely makes it more egregious. The notice of a right to request an informal hearing in the June 12 Proposed Termination Notice was made moot not only because the termination of benefits had already occurred on June 1, 2019, but also because yet another MTC was scheduled for June 19, 2019, in the same matter, but without any further opportunity to request an informal hearing. The notices from Defendants were confusing and too late.

58. The basis for Defendants' decision is not adequately stated. The June 12 Proposed Termination Notice regurgitates various provisions of the Code of Federal Regulations concerning reasons for terminating assistance, including fraud, in its two pages and provides just two sentences concerning Ms. Welch: "Ms. Welch failed to provide true and complete information regarding her marriage, household composition and income. As a result she received $185,400 overpayment in housing assistance payment." Included with that notice is a 6-page "Notice of Occupancy Rights under the Violence Against Women Act" that adds confusion.

59. Ms. Welch has been irreparably harmed by Defendants' actions and is entitled to declaratory, injunctive and compensatory relief in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
Compulsory Repayment of Housing Assistance Payments Without Notice and Hearing
(Violation of 42 U.S.C. § 1437f and 24 C.F.R. § 982.555)
(Against All Defendants)

60. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs 1 through 44 and 55 through 59, as though fully set forth herein.

///

///

///

61. Defendants have deprived Ms. Welch of her previously received housing assistance payments under the HCV Program by demanding repayment in full without adequate explanation, notice and an opportunity for a hearing in violation of the Housing Act (42 U.S.C. § 1437f) and implementing regulations (24 C.F.R. § 982.555).

62. Defendants demanded repayment of 100% of the housing assistance benefits Ms. Welch received from her inception with the HCV Program in 2003 to termination in 2019. The only "explanation" is the conclusory statement in the June 12 Notice of Proposed Termination of HCV Eligibility that "[a]s a result she received $185,400 overpayment…."

63. The June 19, 2019, MTC was scheduled purportedly for the purpose of reviewing how the overpayment was calculated and to establish a repayment agreement. No documentation was provided at this meeting explaining the overpayment calculation and no notice of the opportunity to have an informal hearing following the June 19, 2019, final determination was provided.

64. Ms. Welch has been irreparably harmed by Defendants' actions and is entitled to declaratory, injunctive and compensatory relief in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests that this Court issue the following relief:

A. Declare Defendants' acts and omissions as described above to be in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and

B. Declare Defendants' acts and omissions as described above to be in violation of 42 U.S.C. § 1437f and its implementing provisions in 24 C.F.R. § 982.555; and

C. Order that Defendants reinstate Ms. Welch in the HCV Program and continue her housing assistance payments as of the date her benefits were improperly terminated; and

D. Order Defendants to refund to Ms. Welch the amount of $185,400.00 of housing assistance benefits that she was required to repay; and

E. Issue a permanent injunction forbidding the Defendants, their agents, employees, and all persons acting in concert or participation with Defendants from terminating Plaintiff's

housing assistance benefits prior to providing notice and an opportunity for a hearing before an impartial hearing officer; and

  F. Award Ms. Welch attorneys' fees and costs; and

  G. Grant such other relief as the Court deems proper and just.

DATED: June 1, 2021    MURPHY & ASSOCIATES PC, a
            California professional law corporation

           By *[signature]*
            C. Nicole Murphy, Esq.