UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETH I. WELCH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HOUSING AUTHORITY OF THE COUNTY OF SACRAMENTO, et al.,<br><br>　　　　Defendants. | No. 2:21-cv-00974-TLN-JDP<br><br><br>**ORDER** |

This matter is before the Court on Plaintiff Beth I. Welch's ("Plaintiff") Motion for Summary Judgment.  (ECF No. 16.)  Defendant Sacramento Housing and Redevelopment Agency ("Defendant") filed an opposition.[1]  (ECF No. 18.)  Plaintiff filed a reply.  (ECF No. 20.)  For the reasons set forth below, Plaintiff's motion is GRANTED in part and DENIED in part.

///
///
///
///
///

---

[1] The Housing Authority of the County of Sacramento, La Shelle Dozier, and Marc Ledet are also named as Defendants, but they do not join the opposition.  The Court will refer to all Defendants collectively as "Defendants."

1

### I.  FACTUAL AND PROCEDURAL BACKGROUND[2]

The instant action arises from Defendant's alleged termination of Plaintiff's housing assistance payment benefits.  (*See* ECF No. 1.)  In 2003, Plaintiff applied for and was approved by Defendant for benefits.  (Pl.'s Statement of Undisputed Facts ("PSUF"), ECF No. 16-1 ¶ 1.)  In 2003, Plaintiff also entered into a lease agreement with Bruce Mintzer ("Mintzer") for an apartment in Carmichael, California.[3]  (*Id.* at ¶ 2.)  Defendant and Mintzer entered into a Housing Assistance Payments ("HAP") contract pursuant to which Defendant agreed to pay a portion of Plaintiff's monthly rent directly to Mintzer.  (*Id.* at ¶ 3.)  As a participant in the Housing Choice Voucher ("HCV") program and in compliance with U.S. Department of Housing and Urban Development ("HUD") guidelines, participants complete a recertification packet each year that provides Defendant with the requisite information to determine the percentage of HAP benefits participants are entitled to receive.  (Def's Statement of Disputed Facts ("DSDF"), ECF No. 18-2 ¶ 2.)

Plaintiff signed her 2019 annual recertification packet on January 30, 2019, and on March 22, 2019, her annual recertification went through quality control to confirm the information provided.  (*Id.* at ¶¶ 3–4.)  On April 22, 2019, Housing Choice Voucher ("HCV") Program Analyst Marc Ledet ("Ledet") began an investigation of Plaintiff's possible fraud and/or abuse of the HCV program, as her email on the 2019 recertification packet had a domain name "@MikeMackConstruction."  (*Id.* at ¶¶ 4–6.)  Plaintiff's prior annual recertification packets all reported zero wages for Plaintiff and that she was divorced with one or more of her children residing with her until 2017.  (*Id.* at ¶ 9.)  A Mandatory Tenant Conference ("MTC") was scheduled for May 1, 2019, to discuss an unapproved resident and unreported income, but

---

[2]  The following recitation of facts is only disputed where specifically noted.

[3]  Defendant denies this fact (which also states that Plaintiff entered into the lease agreement on July 3, 2003), citing to paragraph 6 in Marc Ledet's declaration.  (Def.'s Response to Pl.'s Statement of Undisputed Facts ("DR"), ECF No. 18-1 ¶ 2.)  Ledet avers in his declaration that the effective date of the lease agreement is May 27, 2003, but otherwise reiterates the same facts.  (*See* ECF No. 18-3 ¶ 6.)  The Court finds the effective date of the lease agreement immaterial to resolution of the instant dispute.

2

1  Plaintiff did not appear.  (*Id.* at ¶¶ 10–11.)

2  On May 20, 2019, Ledet telephoned Plaintiff and scheduled a Mandatory Tenant Conference ("MTC") for May 29, 2019, which Mintzer and Plaintiff attended.  (PSUF ¶¶ 4–7.) Defendant regularly paid the monthly housing assistance payments for Plaintiff on the first day of each month, but on June 1, 2019, Defendant did not pay the housing assistance payment for Plaintiff.  (*Id.* at ¶ 8.)  Defendants have not paid any monthly housing assistance payments for Plaintiff since May 1, 2019.  (*Id.* at ¶ 9.)

Defendants subsequently issued three notices dated June 12, 2019, as follows:

(1) An MTC Disposition Notice, which contains the two following paragraphs:

> [X] You attended the mandatory tenant conference and the following decision has been made: to propose termination of your HCV eligibility and require you to pay 100% of the housing assistance payments made on your behalf.
>
> [X] The Housing Authority has determined that you are in violation of HUD regulations and is proceeding with proposed termination of your Housing Choice Voucher (HCV) eligibility.

(2) A Notice of MTC on June 19, 2019, to review how overpayment of housing assistance was calculated and establish a repayment agreement; and

(3) A Notice of Proposed Termination of Plaintiff's Housing Choice Voucher eligibility, effective July 30, 2019.

(*Id.* at ¶¶ 10–12.)

The Notice of Proposed Termination of Plaintiff's Housing Choice Voucher eligibility gave Plaintiff a 15-day period from the date of the notice to request an informal hearing.  (*Id.* at ¶ 13.) On June 19, 2019, Mintzer gave a cashier's check to Ledet in the amount of $185,400.[4]  (*Id.* at ¶ 15.)  No MTC Disposition Notice was provided after the June 19, 2019 MTC.  (*Id.* at ¶ 14.)

///

---

[4] Defendant denies this fact (which states in full that at the conclusion of the MTC, Mintzer gave Ledet a check in the amount of $185,400 on behalf of Plaintiff), citing paragraph 30 of Ledet's declaration.  (DR ¶ 15.)  Ledet avers in his declaration the same facts, minus that the check was paid on behalf of Plaintiff.  (*See* ECF No. 18-3 ¶ 30.)  The Court finds this distinction immaterial to the instant dispute.

1    On June 20, 2019, Plaintiff signed an Overpayment of Housing Subsidy Repayment Agreement, which noted the $185,400 had been paid in full. (*Id.* at ¶ 16.) On August 7, 2019, Mintzer received a contract termination notice, stating the HAP contract for Plaintiff would be terminated effective August 31, 2019. (*Id.* at ¶ 17.)

Plaintiff filed this action on June 1, 2021. (ECF No. 1.) Plaintiff filed her First Amended Complaint ("FAC") on September 15, 2021, alleging claims for: (1) termination of housing assistance payments without notice and a hearing in violation of the Due Process Clause of the Fourteenth Amendment; (2) compulsory repayment of housing assistance payments without notice and a hearing in violation of the Due Process Clause of the Fourteenth Amendment; (3) termination of housing assistance payments without notice and a hearing in violation of 42 U.S.C. § 1437f and 24 C.F.R. § 982.555; and (4) compulsory repayment of housing assistance payments in violation of 42 U.S.C. § 1437f and 24 C.F.R. § 982.555. (ECF No. 11 at 10–13.) Plaintiff filed the instant motion for summary judgment on February 24, 2022. (ECF No. 16.)

## II.  STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. at 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

///

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587.

### III.  ANALYSIS

Plaintiff moves for summary judgment on all her claims, arguing: (1) HAP benefits are a property right protected by the requirement of procedural due process; (2) her HAP benefits were terminated on June 1, 2019, without notice and an offer of an informal hearing; and (3) Defendant failed to cure the violation with a subsequent notice of termination and offer of an informal hearing.[5]  (ECF No. 16 at 5–8.)  The Court will consider the first argument alone and then evaluate the second and third arguments together as they both essentially argue Defendant violated Plaintiff's Fourteenth Amendment due process rights.  The Court will finally consider whether Defendant violated 42 U.S.C. § 1437f and 24 C.F.R. § 982.555.

### A.   Whether HAP Benefits are a Property Right

Plaintiff argues that because the benefits conferred under the HCV Program "can only be terminated based on specific causes set forth in the laws and regulations," the benefits are "a property interest protected by the requirement of procedural due process." (ECF No. 16 at 6 (citing *Goldberg v. Kelly*, 397 U.S. 254, 266–71 (1970).)  Plaintiff contends therefore that prior to termination of such benefits under an outstanding HAP contract, the local public housing agency ("PHA") "is required to provide adequate notices and an opportunity for an informal hearing before an impartial hearing officer." (*Id.*)  In opposition, Defendant does not contest that the benefits conferred under the HCV Program are a property interest protected by procedural due process. (*See* ECF No. 18.)

"The requirement of procedural due process imposes constraints on government actions which deprive individuals of protected liberty and property interests." *Powderly v. Schweiker*, 704 F.2d 1092, 1097 (9th Cir. 1983). "A court must be convinced that the plaintiff has a property

---

[5]   Although Plaintiff moves for summary judgment as to Claims Two and Four, she does not make any arguments in her briefing or provide any authority as to those claims.  Accordingly, Plaintiff's motion for summary judgment as to Claims Two and Four is DENIED.

or liberty interest protected by due process before it can evaluate whether the process afforded that interest was adequate." *Id.* The Supreme Court has held that welfare benefits "are a matter of statutory entitlement for persons qualified to receive them" and "[t]heir termination involves state action that adjudicates important rights." *Goldberg*, 397 U.S. at 263. The Ninth Circuit has also specifically held that recipients of federal housing assistance payments have a property interest in those benefits "to which the procedural protections of the due process clause apply." *Nozzi v. Housing Auth. of L.A.*, 806 F.3d 1178, 1191 (9th Cir. 2015), *as amended on denial of reh'g en banc* (Jan. 26, 2016).

In the instant case, it is undisputed between the parties that Plaintiff has been a recipient of housing assistance payments through the HCV program through May 1, 2019. (*See* PSUF ¶¶ 1–3, 8–9; DR ¶¶ 1–3, 8–9.) Based on the foregoing case law, the Court finds Plaintiff's housing assistance payments are a property interest protected by procedural due process and Plaintiff is entitled to an evidentiary hearing prior to termination. *Goldberg*, 397 U.S. at 264.

     B.   Whether Defendant Violated Plaintiff's Fourteenth Amendment Due Process Rights

Plaintiff argues that Defendant regularly paid housing assistance benefits on her behalf on the first day of each month, but on June 1, 2019, Mintzer did not receive a housing assistance payment on her behalf from Defendant nor was he notified that payments would be terminated on that date. (ECF No. 16 at 6.) Plaintiff reiterates that "due process requires, among other things, timely and adequate notice of the reasons for the proposed termination and a written decision following a pre-termination hearing that states the reasons for the determination and the evidence on which the decisionmaker relied." (*Id.* at 7.)

In opposition, Defendant asserts that Plaintiff has not established that her benefits were terminated on June 1, 2019 and "offers zero evidence" in support. (ECF No. 18 at 8.) Defendant notes that Plaintiff cites to her declaration and Mintzer's declaration as evidence, but neither declaration establishes benefits were terminated on June 1, 2019 — they only support the fact that Mintzer did not receive a payment on June 1, 2019. (*Id.*) Defendant contends the matter of whether Plaintiff's benefits were actually terminated on June 1, 2019 is in dispute, because it

7

1    placed a tenant hold on Plaintiff's account on May 20, 2019, but made no determination of her
2    eligibility and assistance on or before June 1, 2019. (*Id.* at 10.)
3          In reply, Plaintiff argues "[t]he effect of the 'tenant hold' was to <u>terminate</u> Plaintiff's
4    housing assistance benefits." (ECF No. 20 at 2 (emphasis in original).) Plaintiff notes that
5    Defendant concedes her benefits were "discontinued/stopped by [the tenant hold placed] on May
6    20, 2019," but this "allowed [Defendant] to circumvent due process requirements under the
7    pretense that the deprivation is only temporary while an investigation is pending." (*Id.* at 2–3.)
8    Plaintiff further notes that Defendant neither provided any authority for termination of housing
9    assistance payments pending an investigation, nor has Defendant "set forth specific facts to show
10   that withholding housing assistance payments under the guise of a 'tenant hold' is not the
11   equivalent of a deprivation of Plaintiff's constitutionally protected property interest." (*Id.* at 3–4.)
12         The Supreme Court has explicitly stated that "when welfare is *discontinued*, only a pre-
13   termination evidentiary hearing provides the recipient with procedural due process." *Goldberg*,
14   397 U.S. at 264 (emphasis added). For welfare recipients, a termination of benefits makes their
15   situation "immediately desperate," and their "need to concentrate upon finding the means for
16   daily subsistence, in turn, adversely affects [their] ability to seek redress from the welfare
17   bureaucracy." *Id.*
18         In the instant case, Plaintiff is correct that Defendant does not cite to *any authority* for the
19   proposition that a "tenant hold" does not amount to a termination of benefits. (ECF No. 20 at 3–
20   4; *see also* ECF No. 18.) It is undisputed that Defendant has not paid any monthly housing
21   assistance payment for Plaintiff since May 1, 2019. (PSUF ¶ 9; DR ¶ 9.) Defendant does not
22   dispute Plaintiff's assertion that it did not provide her with notice that her benefits would be
23   terminated on June 1, 2019, or an evidentiary hearing prior to that date. (ECF No. 16 at 8; *see*
24   *also* ECF Nos. 18, 18-1, 18-2.) Therefore, it is undisputed that Defendant *discontinued* Plaintiff's
25   benefits when it placed a "tenant hold" on her account on May 20, 2019, and ceased making
26   housing assistance payments starting June 1, 2019. Because Defendant did not provide Plaintiff
27   with notice or an opportunity for an evidentiary hearing prior to discontinuing benefits, the Court
28   therefore finds that Defendant violated Plaintiff's Fourteenth Amendment procedural due process

rights. Accordingly, Plaintiff's motion for summary judgment as to Claim One is GRANTED.

    C. <u>Whether Defendant Violated 42 U.S.C. § 1437f and 24 C.F.R. § 982.555</u>

  The Due Process Clause sets forth "the procedural minimums" once a substantive right has been created, "not a statute or regulation." *Nozzi*, 806 F.3d at 1192. Therefore, if the Court analyzes whether Defendant complied with due process, the Court need not address whether Defendant complied with the requirements of 42 U.S.C. § 1437f and 24 C.F.R. § 982.555. *See id.* Because Defendant failed to comply with procedural due process, and due process sets forth "the procedural minimums," the Court finds that Defendant has also violated 42 U.S.C. § 1437f and 24 C.F.R. § 982.555. *See Nozzi*, 806 F.3d at 1192. Accordingly, Plaintiff's motion for summary judgment as to Claim Three is GRANTED.

**IV.** **CONCLUSION**

  For the foregoing reasons, Plaintiff's Motion for Summary Judgment is hereby GRANTED as to Claims One and Three and DENIED as to Claims Two and Four. (ECF No. 16.) The parties are hereby ordered to file a Joint Notice of Trial Readiness within thirty (30) days of the electronic filing date of this Order indicating their readiness to proceed to trial on Claims Two and Four and proposing trial dates.

  IT IS SO ORDERED.

**DATED: August 9, 2022**

              Troy L. Nunley
              United States District Judge